IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

TERESA WEATHERSPOON                  PLAINTIFF

VS.                 CIVIL ACTION NO. 1:13CV158-DAS

COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION           DEFENDANT

**MEMORANDUM OPINION**

    This matter is before the court pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying the application of Teresa Weatherspoon for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. The parties in this case have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. After considering the issues raised and after conducting an oral argument on the matter, the court finds as follows:

**I. FACTUAL AND PROCEDURAL HISTORY**

    On April 19, 2010, the plaintiff filed a Title II application for a period of disability and disability insurance benefits. On that same date, the plaintiff protectively filed a Title XVI application for supplemental security income. On June 18, 2012, an administrative law judge found the plaintiff not disabled, and on June 27, 2013, the appeals council affirmed that decision. As a result, on August 26, 2013, the plaintiff filed the present action in the United States District Court, arguing that the Appeals Council and the ALJ committed reversible error.

**II. DISCUSSION**

    This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct

legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining his

---

[1] *See* 20 C.F.R. § 404.1520 (2012).

burden at each of the first four levels then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove he is not currently engaged in substantial gainful activity.[3] Second, the plaintiff must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude the plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1.[5] Fourth, the plaintiff bears the burden of proving he is incapable of meeting the physical and mental demands of her past relevant work.[6] If the plaintiff is successful at all four of the preceding steps the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that he cannot, in fact, perform that work.[8]

In the present case, there are three issues before the court: (1) Whether the Appeals Council erred when it did not consider evidence submitted subsequent to the ALJ's decision;

---

[2]*Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[3]20 C.F.R. § 404.1520(b) (2012).

[4]20 C.F.R. § 404.1520(c) (2012).

[5]20 C.F.R. § 404.1520(d) (2012). If a plaintiff's impairment meets certain criteria, that plaintiff's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. § 404.1525 (2012).

[6]20 C.F.R. § 404.1520(e) (2012).

[7]20 C.F.R. § 404.1520(f)(1) (2012).

[8]*Muse*, 925 F.2d at 789.

(2) whether the ALJ erred in his determination of the plaintiff's residual functional capacity; and

(3) whether the ALJ erred when he failed to find the plaintiff's condition equaled a Listing.

The court will address each issue in turn.

**1. Appeals Council**

With her first argument, the plaintiff contends the Appeals Council erred when it did not consider evidence submitted subsequent to the ALJ's decision. Specifically, the plaintiff submitted records and a Medical Source Statement completed by her treating physician, Dr. Robert Long. She also submitted an MRI dated July 6, 2012. While it did not address the MRI, the Appeals Council did address the additional records and wrote:

> We also looked at medical evidence from Dr. Robert Long dated June 28, 2012--July 2, 2102 (7 pages), and medical evidence from Baptist Memorial Hospital dated July 6--9, 2012 (4 pages). The Administrative Law Judge decided your case through June 15, 2012. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before June 15, 2012.

As to the record, the plaintiff argues the Appeals Council erred because the records the Council described as having been dated June 28, 2012-- July 2, 2012, actually went back to January 26, 2012. Additionally, while the MSS provided by Dr. Long was dated July 26, 2012, the plaintiff contends it clearly refers back to her condition prior to the ALJ's June 18, 2012, decision. Finally, she argues the MRI provides evidence to support her complaints of lower back pain – something the ALJ found lacking.

The government does not disagree with the plaintiff's contentions with respect to the timing of it all. However, the government argues that nothing submitted subsequent to the ALJ's determination is "new and material." The Fifth Circuit has explained that "[e]vidence which is

4

merely cumulative of that already in the administrative record is not 'new' evidence that would support a remand . . . ." *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989). New evidence also must be material and that requirement means the new evidence cannot merely concern . . . the deterioration of a condition that was not previously disabling." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Furthermore, "[f]or new evidence to be material, there must exist the reasonable possibility that it would have changed the outcome of the Secretary's determination." *Latham v. Shalala* 36 F.3d 482, 483 (5th Cir. 1994).

The first group of documents the court considers can be called simply the "medical records." These records consist of Dr. Long's January and April 2012 progress notes and the Baptist Hospital records from May 2005 to June 2012. As the government pointed out during oral argument, none of these records provides anything that differs even slightly from what the ALJ had before him at the time of his decision. It is undisputed that the plaintiff is approximately five feet seven and one-half inches tall and weighs in excess of three hundred pounds. The ALJ listed her following impairments as severe: back disorders, hypertension, a history of cardiac disorders, knee disorders, diabetes mellitus, and morbid obesity. While the Appeals Council was wrong that these medical records were "about a later time," the court agrees with the government that it was merely cumulative, and there is no reasonable possibility that it would have changed the outcome of the decision.

Next, the plaintiff argues the Appeals Council erred when it did not consider a Medical Source Statement from her treating physician, Dr. Long. While the Appeals Council did not mention this MSS specifically, such an omission may not be determinative. *See Higginbotham v. Barnhart*, 405 F.3d 332, 335 n.1 (5th Cir. 2005) (holding that detailed discussion of additional

5

evidence not required). However, there is some authority that the Appeals Council must address specifically any new evidence should that evidence come from a treating physician. *See, e.g., Diaz v. Colvin*, 2014 WL 2002277 at *3 (S.D. Tex. May 15, 2014). The question, therefore, becomes again whether the subsequently submitted evidence is "new and material." Looking to Dr. Long's MSS, it is clear the findings are not "new" as defined by the Fifth Circuit, and indeed they comport in large part with the RFC from the ALJ's decision. For example, Dr. Long checked a box to indicate he believed the plaintiff was capable of low stress jobs. He also opined she could sit for approximately four hours and stand/walk for approximately four hours in an eight-hour workday. In fact, Dr. Long's MSS differed dramatically from his March 30, 2011 letter in which he described the plaintiff as "totally and permanently disabled [*sic*] to work."

During oral argument plaintiff's counsel pointed specifically to paragraph thirteen of Dr. Long's MSS that asks, "[h]ow often during the typical workday is your patient's experience of pain or other symptoms severe enough to seriously interfere with attention and concentration needed to perform even simple work tasks?" In response to this question, Dr. Long checked the box, indicating "occasionally," and the form provided that "occasionally" would mean "6% to 33% of an 8-hour working day." Plaintiff's counsel continued, therefore, that because the plaintiff may be unable to concentrate for more than two hours in an eight-hour workday, she was unable to perform the jobs provided in ALJ's opinion or any other jobs in the national or local economy.

Despite the plaintiff's contention, however, the court does not find that Dr. Long's MSS qualifies as "new and material" evidence, and thus the Appeals Council did not err when it affirmed the ALJ's decision. After examining Dr. Long's MSS, it is clear that virtually the

6

entire document is consistent with the evidence before the ALJ when he made his decision. As to the issue concerning the plaintiff's ability to concentrate, there is nothing to indicate that "occasionally" indeed meant thirty-three percent of her time as opposed to six percent of her time. As such, the court finds there is no reasonable possibility that this evidence alone would have changed the outcome of the Secretary's determination." *Latham,* 36 F.3d at 483.

The next item the plaintiff argues the Appeals Council should have considered was an MRI dated July 6, 2012. The plaintiff contends this evidence was "new and material" because it provided objective evidence to support the plaintiff's complaints of lower back pain. In his opinion, the ALJ noted specifically – "[t]he claimant testified incredibly . . . that she experiences debilitating lower back and hip pains. The repeated lumbar x-rays to the contrary present primarily findings regarding the claimant's upper back . . . ." Again, after examining the evidence, the court finds nothing to indicate that had the MRI been before the ALJ, it would have changed the outcome. While the test does indicate degenerative changes in the lower back, there is ample evidence to support the ALJ's finding that any lower back problems were not sufficient to support a finding of disabled. As the ALJ pointed out, the plaintiff "presented essentially no treatment visits to any physician's office or to any hospital for her asserted debilitating back pain." While a lack of treatment alone may not provide substantial evidence to support a ALJ's determination, it is part of an overall picture to consider particularly where the plaintiff visited healthcare providers on numerous occasions for a variety of ailments and rarely received treatment for her allegedly debilitating back pain. Realizing this, it is clear that evidence of minor degenerative changes in her back described in the MRI report simply would not have changed the outcome.

## 2. Residual Functional Capacity

The ALJ found the plaintiff retained the residual functional capacity to:

> [L]ift 10 pounds occasionally and less than 10 pounds frequently. She can stand and walk for two hours in an eight-hour workday and can sit for six hours in an eight-hour workday. She requires the option to sit or stand at will. She can occasionally climb ramps and stairs; she can never climb ladders, ropes, or scaffolds; and she can occasionally balance, stoop, crouch, kneel, and crawl.

The plaintiff argues that there is no evidence in the record to support this RFC. During oral argument when asked specifically where evidence existed in the record that would support the ALJ's finding, the government responded that both Dr. Robert Culpepper and Dr. James Griffin found the plaintiff could perform a full range of light work. The government continued that because both of those state agency physicians found she could perform light work, it followed she could perform the sedentary work depicted in the ALJ's RFC. The court agrees that the regulations provide a claimant who can perform light work can perform sedentary work, "unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b). Because there are no issues surrounding the plaintiff's fine dexterity and because Dr. Long found she could sit for four hours in an eight-hour workday, the limiting language does not affect the present case. Consequently, the court looks to the medical evidence to determine whether substantial evidence supports the ALJ's finding.

First, the ALJ considered the consultative examination performed by Dr. Anthony Fouts and noted that Dr. Fouts found "generally negative objective findings." While Dr. Fouts did check the box to indicate the plaintiff could sit for only thirty minutes in an eight-hour workday, he also reported that his findings were based primarily on the plaintiff's subjective complaints. Because the ALJ found the plaintiff less than credible, the findings based on her subjective

8

complaints were given little weight. After examining the credibility determination, the court agrees with the ALJ and finds substantial evidence exists to discount Dr. Fouts' findings that were based on the plaintiff's subjective complaints.[9]

The ALJ also looked to the records provided by the plaintiff's treating physician, Dr. Robert Long. In his opinion, the ALJ discounted Dr. Long's opinion that the plaintiff was disabled as a determination reserved to the Commissioner. The plaintiff does not disagree with this finding, but the plaintiff points out the ALJ also discounted Dr. Long's opinion because he did not "express specific function-by-function limitations," and – continued the plaintiff – Dr. Long provided that analysis in his MSS dated July 26, 2012. As noted *supra*, however, despite the fact that the Appeals Council did not address this MSS, it is clear to the court that the findings are largely consistent with the RFC. While Dr. Long found the plaintiff's pain would interfere with her ability to concentrate, his remaining findings were very much inconsistent with his March 2011 letter in which he opined the plaintiff was disabled. Moreover, as noted, Dr. Long in his MSS found the plaintiff could sit for four hours in a workday and stand/walk for four hours in an eight-hour workday. The ALJ considered Dr. Long's reports over a period of years, and in virtually every report, Dr. Long noted specifically that the plaintiff had a "normal gait" and "no motor deficits." He regularly noted that the plaintiff was obese and recommended that she lose weight to help with her various reported pains, sleep apnea, and diabetes; however, he

---

[9]The thrust of the ALJ's credibility determination concerned the lack of objective medical evidence that would support the plaintiff's complaints of debilitating pain. For instance, while the plaintiff rated her pain as an eight on a ten-point scale and stated she could not lift a gallon of milk, the record repeatedly showed only "mild" or "minimal" arthritic findings. At another point, the ALJ pointed to Dr. Fouts' comment that the plaintiff's apparent inability to perform only minimal lumbar flexion was inconsistent with her ability to get on and off the examination table without assistance. Dr. Fouts also noted that the plaintiff's back pain was "not associated with any neurologic deficit."

never indicated she was unable to walk or even that she had difficulty doing so. Accordingly, the court finds substantial evidence supports the ALJ's analysis of Dr. Long's records.

Finally, the ALJ considered the state agency physician's opinions that the plaintiff could perform light work and found them "generally consistent with the preponderance of the record" and gave them some weight. While the opinions of the state agency physicians are not often given great weight because they do not examine a claimant and they rarely have access to a complete medical record, the ALJ's occasionally rely on them. Also, while it would be a rare case for their opinions alone to provide substantial evidence, the ALJ's find their opinions helpful when they are largely consistent with both the records and the opinions of examining and treating physicians. Here, both reports found the plaintiff could lift twenty pounds occasionally and ten pounds frequently. Both also found the plaintiff could sit six hours in an eight-hour workday and stand/walk for six hours. While these examinations are often relatively unhelpful at this stage, the reports in this instance were remarkably consistent. Moreover, while the ALJ gave them some weight, he clearly did not rely exclusively on them and disregard the findings of the examining and treating physicians. In the end, because the state agency reports were so consistent with one another and because the ALJ relied on them in conjunction with the findings of Drs. Fouts and Long, the court finds substantial evidence to support the ALJ's RFC.

### 3.  The Listings

Finally, the plaintiff argues the ALJ erred when he failed to find her condition equaled Listing 1.02A and/or 1.04A. Each Listing specifies the objective medical and other findings needed to meet the criteria of that Listing. 20 C.F.R. § 404.1525(c)(3). However, a claimant also will be found disabled if his impairment is determined to "medically equal" a Listing, which

10

means it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). In his decision, the ALJ found the plaintiff suffered from back disorders, hypertension, a history of cardiac disorders, knee disorders, diabetes mellitus, and morbid obesity. The plaintiff argues that the ALJ erred when he considered each of these impairments separately but did not consider them in combination, but she does not make clear precisely where the ALJ erred at 1.02A or 1.04A. For both listings, the plaintiff argues only that the ALJ erred when he did not consider her impairments in combination and whether those combined impairments equaled a Listing. However, "[in] order to qualify for benefits by showing that an unlisted impairment, or combination of impairments, is equivalent to a listed impairment, a plaintiff must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Washington v. Barnhart*, 424 F. Supp. 2d 939, 951 (S.D. Tex 2006) (citing *Sullivan v. Zebley* 493 U.S. 521, 531 (1990)).

As to 1.02A, the ALJ found the plaintiff did not meet or equal this Listing "because the record fails to present any objective evidence that the claimant experiences an inability to ambulate effectively as defined in the Regulations." Repeatedly over a period of years, Dr. Long described her gait as normal. The consultative examiner, Dr. Fouts, also found her gait was normal, and no balance device was required. Consequently, while the court could imagine an instance in which the combination of impairments such as obesity, cardiac problems, and diabetes could render someone unable to ambulate effectively and such a person's condition may substitute for portions of 1.02A, substantial evidence exists in this case to support the ALJ's decision that the plaintiff could indeed ambulate effectively, and thus, her condition did not equal Listing 1.02A.

11

As to 1.04A, while the plaintiff presented some findings related to her back, she did not provide the necessary medical findings specific to that Listing. The ALJ noted "[a] lumbar x-ray adduced the chronic T12 fracture and associated deformities at the T12 and L1 levels and superimposed degenerative changes at the T11-12 level." The plaintiff also submitted an MRI to the Appeals Council that showed only minimal and mild changes. Certainly there was no evidence produced to show the plaintiff met 1.04A, and the plaintiff did not point specifically to any medical evidence that would equal in severity the criteria found at 1.04A. Nor did the plaintiff argue which records corresponded to which criteria found at the Listing. Accordingly, the court finds substantial evidence to support the ALJ's findings that the plaintiff's impairments or combination of impairments did not meet or equal either Listing 1.02A or 1.04A.

The court, therefore, finds that substantial evidence supports the ALJ's decision in this matter, and it is thus affirmed. A final judgment consistent with this opinion will be entered.

SO ORDERED, this the 11th day of June, 2013.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE